UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DARIEL DENZEL THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>UTAH TRANSIT AUTHORITY POLICE DEPARTMENT; RYAN MORRILL; JOEY CLARK; TRACY JORGENSEN; and CONRAD LEONG,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (DOC. NO. 79) AND DISMISS ACTION WITH PREJUDICE**<br><br>Case No. 2:24-cv-00736<br><br>Chief District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Dariel Denzel Thomas, proceeding without an attorney, brought this civil rights action against the Utah Transit Authority (UTA) Police Department and officers Ryan Morrill, Joey Clark, Conrad Leong, and Tracy Jorgensen.[1] Mr. Thomas asserts claims under 42 U.S.C. § 1983 for First, Fourth, Fifth, and Fourteenth Amendment violations relating to two encounters with these officers on public trains.[2] The defendants move to dismiss for failure to state a plausible claim and on qualified immunity grounds.[3] Mr.

[1] (Compl., Doc. No. 1.) Since initiating this case, and in response to multiple motions to dismiss by the defendants, Mr. Thomas has moved to amend his complaint several times, which the court has permitted. (*See* Doc. Nos. 24, 27, 28, 38, 40, 51, 52, 69, 72, 73, & 76.) The operative complaint is Mr. Thomas's third amended complaint, which is comprised of a form civil rights complaint and an exhibit containing factual allegations. (Third Am. Compl., Doc. No. 77; Ex. to Third Am. Compl., Doc. No. 77-1.)

[2] (Third Am. Compl. 3, Doc. No. 77; Ex. to Third Am. Compl., Doc. No. 77-1 at 1–5.) Where Mr. Thomas's filings do not contain page numbers, references are to the CM/ECF pagination.

[3] (Mot. to Dismiss Third Am. Compl. & Mem. in Supp. (Mot.), Doc. No. 79.)

Thomas opposes, arguing he has plausibly alleged clearly established constitutional violations under § 1983.[4] Because Mr. Thomas fails to state a plausible claim for relief against the UTA Police Department, and the individual officers are entitled to qualified immunity, the undersigned[5] recommends the district judge grant the motion to dismiss and dismiss this action with prejudice.

## BACKGROUND[6]

When Mr. Thomas encountered Officer Jorgensen and Officer Leong he was on a UTA train.[7] Officer Jorgensen boarded and began asking passengers for tickets.[8] Mr. Thomas opened his backpack, pulled out his ticket, and showed it to Officer Jorgensen, who said the ticket was invalid.[9] Mr. Thomas objected that he "just paid for it today."[10] Officer Jorgensen explained the ticket had expired, and said Mr. Thomas

---

[4] (Pl.'s Mem. in Opp'n to Mot. (Opp'n), Doc. No. 88.)

[5] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (*See* Doc. No. 12.)

[6] As noted above, Mr. Thomas's operative complaint consists of a form civil rights complaint and an exhibit containing factual allegations. (Third Am. Compl., Doc. No. 77; Ex. to Third Am. Compl., Doc. No. 77-1.) Review of the factual allegations in the attached exhibit is appropriate. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64 (10th Cir. 2025) (explaining exceptions to the rule that courts must only review the allegations in the complaint on a motion to dismiss include "documents attached to the complaint as exhibits").

[7] (Ex. to Third Am. Compl., Doc. No. 77-1 at 1.)

[8] (*Id.*)

[9] (*Id.*)

[10] (*Id.*)

needed to get off the train with him or be taken to jail.[11] Mr. Thomas collected his backpack and bike and exited the train.[12]

On the train platform, Officer Jorgensen asked Mr. Thomas for his identification.[13] Mr. Thomas placed his bike "between [his] legs to hold it up" and provided his identification.[14] Officer Jorgensen asked him to remove the mask he was wearing.[15] But Mr. Thomas refused, stating there was no need because he just provided his identification.[16] Officer Jorgensen then ran Mr. Thomas's name for warrants, and took a picture of him while doing so.[17] Officer Leong was also on the platform taking pictures of Mr. Thomas from a distance.[18] Officer Leong then approached and circled Mr. Thomas, taking more pictures.[19] Mr. Thomas felt uncomfortable, targeted, harassed, and unsure about what the officers were doing with these pictures.[20]

---

[11] (*Id.*)

[12] (*Id.*)

[13] (*Id.*)

[14] (*Id.*)

[15] (*Id.*)

[16] (*Id.*)

[17] (*Id.*)

[18] (*Id.*)

[19] (*Id.*)

[20] (*Id.*)

After confirming Mr. Thomas had no warrants, Officer Jorgensen returned and explained he was giving him a citation.[21] Mr. Thomas said he disagreed that his train ticket was invalid and he refused to sign the citation.[22] He then asked why the officers were taking pictures of him.[23] Officer Jorgensen said it was "protocol they were supposed to do," and that it was "procedure," which Mr. Thomas believed to be untrue.[24] The officers then told him he was free to go.[25]

The next day, Mr. Thomas encountered Officer Morrill and Officer Clark.[26] While waiting for his train, Mr. Thomas noticed the officers watching him.[27] He walked by them, said hello, and attempted some small talk about guns, telling one of them his gun looked cool and asking what kind it was.[28] Officer Morrill then took out his phone and faced it towards Mr. Thomas.[29] Mr. Thomas thought the officer was taking pictures of him and asked him to stop.[30] Officer Morrill put his phone back in his pocket.[31]

---

[21] (*Id.*)

[22] (*Id.*)

[23] (*Id.*)

[24] (*Id.*)

[25] (*Id.*)

[26] (*Id.* at 2.)

[27] (*Id.*)

[28] (*Id.*)

[29] (*Id.*)

[30] (*Id.*)

[31] (*Id.*)

At about this time, Mr. Thomas's train arrived.[32] He hopped off his bike and boarded the train.[33] The officers boarded also.[34] On the train, Officer Morrill checked his phone while looking at Mr. Thomas, "as if he was checking to confirm something."[35] Officer Clark moved toward the front where Mr. Thomas was standing.[36] Officer Clark began asking passengers for tickets.[37] He was "only asking people on the right side" where Mr. Thomas was standing, as if he was rushing "to get to something or someone."[38] Officer Clark then asked the passenger across from Mr. Thomas for her ticket but watched Mr. Thomas while doing so.[39] Then, Officer Clark approached and asked Mr. Thomas if he had identification on him.[40]

Mr. Thomas, who is black and was "the only non-white person" on the train, asked Officer Clark why he asked for Mr. Thomas's identification when he only asked everyone else for their tickets.[41] Officer Clark acted like he could not hear Mr. Thomas

---

[32] (*Id.*)

[33] (*Id.*)

[34] (*Id.*)

[35] (*Id.*)

[36] (*Id.*)

[37] (*Id.*)

[38] (*Id.*)

[39] (*Id.*)

[40] (*Id.*)

[41] (*Id.*)

and asked to see his identification again.[42] Mr. Thomas replied sarcastically, "I don't know[,] can you see?"[43] He then asked if the officer had a reasonable suspicion of any crime for purposes of asking to see his identification.[44] Again, Officer Clark acted like he could not hear.[45] Mr. Thomas then explained to the officer that he had a ticket in his backpack, but his stop was approaching, which he did not want to miss.[46] He asked Officer Clark if they could get off the train together so Mr. Thomas could show him the ticket.[47] Officer Clark said "I can't hear you," then called Officer Morrill over.[48] At this point, Mr. Thomas began recording with his phone.[49]

Shortly after, the train arrived at Mr. Thomas's stop.[50] He got off and walked to the other side of the platform.[51] Officer Clark and Officer Morrill followed, and one of them yelled that he wanted to see Mr. Thomas's identification.[52] Officer Clark then stood in front of Mr. Thomas and the bike, while Officer Morrill stood on the side, leaving

---

[42] (*Id.*)

[43] (*Id.*)

[44] (*Id.*)

[45] (*Id.*)

[46] (*Id.*)

[47] (*Id.*)

[48] (*Id.*)

[49] (*Id.*) It is unclear from the complaint whether Mr. Thomas was recording by audio or video.

[50] (*Id.*)

[51] (*Id.*)

[52] (*Id.*)

Mr. Thomas had no room "to go anywhere."[53] Officer Clark asked for identification again, and Mr. Thomas replied that he had a ticket in his backpack.[54] The officer asked for the ticket, and Mr. Thomas said "okay."[55] Mr. Thomas then put his "bike between [his] legs to hold it up" and to "have a free hand to remove [his] backpack."[56] Both officers then pulled Mr. Thomas's hands from the backpack shoulder straps, removed him from his bike, and placed him in handcuffs,[57] which caused "physical pain, bruising, and injury to [his] wrists and shoulders."[58]

At this point, one of the officers looked at Mr. Thomas's phone, noticed it was recording, and "flipped it over."[59] Officer Morrill then searched Mr. Thomas's pockets and retrieved a knife.[60] He then searched Mr. Thomas's backpack.[61] During this time, Officer Clark grabbed Mr. Thomas's mask and clothing.[62] Mr. Thomas objected that

[53] (*Id.* at 2–3.)

[54] (*Id.* at 3.)

[55] (*Id.*)

[56] (*Id.*)

[57] (*Id.*)

[58] (Third Am. Compl. 4, Doc. No. 77.)

[59] (Ex. to Third Am. Compl., Doc. No. 77-1 at 3.)

[60] (*Id.*)

[61] (*Id.*)

[62] (*Id.*)

removing the mask was against his religion.[63] Officer Morrill commanded Mr. Thomas to provide his identification, but Mr. Thomas explained he could not do so while handcuffed.[64] Officer Morrill told Mr. Thomas he was being detained because he did not have proof of a ticket.[65] Mr. Thomas said he was trying to show his ticket.[66] Officer Morrill responded, "no[,] you tried to run."[67] Eventually, the officers placed Mr. Thomas in a police car and he agreed to remove his mask for a picture.[68]

Based on these assertions, Mr. Thomas brings four causes of action under 42 U.S.C. § 1983.[69] In count I, he claims the defendants violated his First Amendment rights by retaliating against him for recording in a public space.[70] In count II, he claims they violated his Fourth Amendment rights by: taking photos of him without consent; subjecting him to unlawful detention without probable cause; searching his belongings illegally; and using "excessive force during arrest, including use of tight handcuffs."[71] In count III, Mr. Thomas claims the defendants violated his Fifth Amendment right to due

---

[63] (*Id.*) Mr. Thomas also alleges the officers saw he was wearing "marijuana design printed pants," claimed they smelled weed, and said this "gave them probable cause to search [him.]" (*Id.* at 3–4.)

[64] (*Id.* at 4.)

[65] (*Id.*)

[66] (*Id.*)

[67] (*Id.*)

[68] (*Id.* at 5.) Mr. Thomas alleges several paragraphs of facts relating to his friend who arrived at the scene, which are irrelevant to Mr. Thomas's claims. (*See id.* at 4.)

[69] (Third Am. Compl. 3, Doc. No. 77.)

[70] (*Id.*)

[71] (*Id.*)

process "through coercive conduct during [his] detention and arrest."[72] And in count IV, he claims the defendants violated his Fourteenth Amendment right to equal protection by targeting and profiling him "base[d] on his appearance" and treating him "more harshly than others."[73] Mr. Thomas seeks more than $10 million in damages, along with injunctive and declaratory relief.[74]

## LEGAL STANDARDS

The defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[75] Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[76] To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[77] Courts

---

[72] (*Id.*)

[73] (*Id.*) In his opposition to the defendants' motion to dismiss, Mr. Thomas contends he raised claims for a First Amendment violation of free exercise of religion, Fourth and Fourteenth Amendment violations for false and misleading affidavits, and a Fourteenth Amendment procedural due process violation relating to the photographs Officer Leong took. (Opp'n, Doc. No. 88 at 4–5.) But Mr. Thomas did not assert these claims in his complaint, and so they are not part of this action. *See Crossett v. Church of Jesus Christ of Latter-Day Saints*, No. 1:24-cv-00205, 2025 U.S. Dist. LEXIS 76756, at *6 (D. Utah Apr. 17, 2025) (unpublished) (rejecting claims raised for the first time in a response to a motion to dismiss as not part of the action); *Boyer v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 922 F. Supp. 476, 482 (D. Kan. 1996) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.").

[74] (Third Am. Compl., Doc. No. 77 at 5.)

[75] (Mot. 13–14, Doc. No. 79.) The individual officers' qualified immunity arguments are properly evaluated under Rule 12(b)(6). *See, e.g.*, *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

[76] Fed. R. Civ. P. 12(b)(6).

[77] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

accept well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[78] But a court need not accept a plaintiff's conclusory allegations as true.[79] "[A] plaintiff must offer specific factual allegations to support each claim,"[80] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[81]

Because Mr. Thomas proceeds pro se (without an attorney), his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[82] Still, pro se plaintiffs must follow the same procedural rules as other litigants.[83] For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[84] While courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of

---

[78] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). The parties present materials outside the operative complaint in connection with their briefing on this motion to dismiss. (*See* Exs. 1–6 to Mot., Doc. Nos. 79-1–79-6; Exs. 1 & 2 to Opp'n, Doc. No. 88 at 8–17.) Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, conversion is unnecessary here because the Rule 12(b)(6) motion may properly be resolved without considering these exhibits.

[79] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[80] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[81] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[82] *Hall*, 935 F.2d at 1110.

[83] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[84] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements,"[85] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[86]

**DISCUSSION**

The defendants argue Mr. Thomas fails to state a claim upon which relief can be granted because he has not shown the UTA Police Department is liable for the alleged actions of its officers, and the individual officers have qualified immunity.[87] In response, Mr. Thomas contends he has alleged facts supporting a municipal liability claim against the UTA Police Department and § 1983 claims against the officers for violations of clearly established constitutional rights.[88]

The defendants' motion to dismiss should be granted. Because Mr. Thomas fails to allege facts necessary to hold the UTA Police Department liable under § 1983, his claims against the department should be dismissed. And because he has not shown the officers' conduct constituted a clearly established constitutional violation, the officers are entitled to qualified immunity and the claims against them should also be dismissed. Each point is discussed in turn below.

---

[85] *Hall*, 935 F.2d at 1110.

[86] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[87] (Mot. 17–38, Doc. No. 79.) The defendants also argue the complaint is insufficiently pled because it fails to provide a short and plain statement that traces the alleged constitutional violations to each defendant and their respective actions. (*Id.* at 14–16.) But the court need not address this argument where dismissal is appropriate on other grounds.

[88] (Opp'n, Doc. No. 88 at 1, 5–6.)

A. Claims Against the UTA Police Department

To start, Mr. Thomas fails to state a claim against the UTA Police Department under § 1983. Section 1983 provides a recovery mechanism for violations of federal rights in certain circumstances.[89] "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[90] But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[91] "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[92] "There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury."[93] The policy or custom may be formal or informal.[94]

---

[89] *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

[90] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

[91] *Waller*, 932 F.3d at 1283 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[92] *Waller*, 932 F.3d at 1283 (quoting *Monell*, 436 U.S. at 694).

[93] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

[94] *Waller*, 932 F.3d at 1283.

Mr. Thomas identifies no policy or custom—nor does he allege facts suggesting a link between a policy or custom and any constitutional injury.[95] Factually, Mr. Thomas alleges Officer Jorgensen said it was "protocol" and "procedure" for the officers to take pictures of him on the platform.[96] But even assuming Officer Jorgensen acted consistent with a policy, Mr. Thomas has not linked the policy with a constitutional injury. As explained below, Mr. Thomas claims the officers violated his Fourth Amendment right against unreasonable searches by photographing him. But it is not unconstitutional for law enforcement officers to photograph individuals in public.[97] Accordingly, Mr. Thomas fails to state a claim against the UTA Police Department under § 1983, and his claims against the department should be dismissed.[98]

The defendants seek dismissal with prejudice. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to

---

[95] In his opposition, Mr. Thomas argues (without explanation) that he has alleged "coordinated conduct implicating institutional practices including: [p]hotographic documentation; [e]vidence deletion; [d]etention and arrest; [u]se of force; [a]ffidavit processing; [s]ubsequent warrant issuance; [and] [l]ack of corrective review." (Opp'n, Doc. No. 88 at 5–6.) But he identifies no policies or facts supporting the existence of a policy in his complaint.

[96] (Ex. to Third. Am. Compl. 77-1 at 1.)

[97] *See United States v. Hay*, 95 F.4th 1304, 1314 (10th Cir. 2024) (explaining that using a camera does not constitute a search under the Fourth Amendment where the camera only captures activity in public view).

[98] *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (holding dismissal of municipal liability claims was appropriate where there were no facts of a policy or custom, nor any allegations which could lead one to plausibly infer a policy caused the plaintiff's injury).

amend."[99] And dismissal should be without prejudice if it is "at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief."[100] Here, the defendants filed three prior motions to dismiss arguing Mr. Thomas failed to adequately allege a municipal policy or custom.[101] Mr. Thomas has repeatedly amended his complaint in response to these motions,[102] but he still fails to allege facts supporting a claim for municipal liability. Under these circumstances, further opportunities to amend the claims against the UTA Police Department would be futile, and these claims should be dismissed with prejudice.

B. Claims Against the Individual Officers

Next, Mr. Thomas's § 1983 claims against the individual officers should be dismissed because the officers are entitled to qualified immunity.[103]

Officers sued personally for damages under § 1983 may raise a defense of qualified immunity.[104] Public officials "are entitled to qualified immunity under § 1983

[99] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted).

[100] *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (citation omitted).

[101] (*See* Mot. to Dismiss 9–10, Doc. No. 24; Second Mot. to Dismiss Am. Compl. 15–16, Doc. No. 52; Third Mot to Dismiss Am. Compl. 12, Doc. No. 72.)

[102] (*See* First Am. Compl., Doc. No. 29; Second Am. Compl., Doc. No. 58 (stricken); Third Am. Compl., Doc. No. 77.)

[103] Mr. Thomas sues Officers Jorgensen, Leong, Clark, and Morrill in their individual capacities. (Third Am. Compl. 2–3, Doc. No. 77.) Although he also purports to seek injunctive and declaratory relief (*id.* at 5), he can only assert § 1983 claims against these officers for damages. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1214 (10th Cir. 2022) ("Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief.").

[104] *See Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018).

unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time."[105] Courts may choose which prong to address first, and if "the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant qualified immunity."[106]

With respect to the second part, "[t]o establish that the law was clearly established in this context, the plaintiff must point to Supreme Court or Tenth Circuit precedents [on] point, or to the clear weight of authority from other circuit courts deciding that the law was as the plaintiff maintains."[107] The relevant "precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue."[108] This does not "mean that the precedent has merely stated a general proposition of applicable law."[109] "Instead, the 'rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"[110] And while this does not require "precisely the same facts[,]"

[105] *Thompson*, 23 F.4th at 1255 (citation omitted).

[106] *Grissom*, 902 F.3d at 1167.

[107] *Thompson*, 23 F.4th at 1255.

[108] *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (citation omitted).

[109] *Grissom*, 902 F.3d at 1168 (explaining that the "Supreme Court has repeatedly advised the lower courts 'not to define clearly established law at a high level of generality'" (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018))).

[110] *Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1167 (10th Cir. 2022) (quoting *Tahlequah v. Bond*, 595 U.S. 9, 12 (2021)).

the "key question is whether the defendants had 'fair warning' that their conduct was unconstitutional."[111]

But "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment."[112] On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for constitutionality."[113] Even under this strict standard, Officers Jorgensen, Leong, Morrill, and Clark are entitled to qualified immunity on Mr. Thomas's claims.[114] As explained below, Mr. Thomas fails to allege any violation of clearly established rights under the First, Fourth, Fifth, or Fourteenth Amendments.[115] Accordingly, Counts I through IV against the individual officers should be dismissed with prejudice.[116]

*1. First Amendment Claim (Count I)*

First, Mr. Thomas has not shown any officer's conduct constituted a clearly established constitutional violation under the First Amendment. In count I, Mr. Thomas

[111] *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)).

[112] *Thompson*, 23 F.4th at 1255 (citation modified).

[113] *Id.* (emphasis in original) (citation modified).

[114] *See Grissom*, 902 F.3d at 1167 ("If the plaintiff fails to satisfy either part of the two-part inquiry, a court must grant the defendant qualified immunity.").

[115] (*See* Third Am. Compl. 3, Doc. No. 77.)

[116] Generally, a claim that is subject to dismissal based on qualified immunity should be dismissed with prejudice. *See Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to grant defendants' motion to dismiss based on qualified immunity "with prejudice"); *Rosenfeld v. Univ. of Colo.*, No. 25-cv-00107, 2026 U.S. Dist. LEXIS 70187, at *39 n.7 (D. Colo. Mar. 31, 2026) (unpublished) (dismissing claims with prejudice where the defendant was entitled to qualified immunity).

claims Officer Clark and Officer Morrill violated his First Amendment rights by retaliating against him for "recording in a public space."[117] Government officials unlawfully retaliate against a person for exercising his First Amendment rights if: (1) he was "engaged in constitutionally protected activity," (2) the official's "actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the official's "adverse action was substantially motivated as a response to the [person's] exercise of constitutionally protected conduct."[118] Here, the defendants contend Mr. Thomas has not alleged facts showing the officers were aware he was recording or arrested him because he began recording.[119] Mr. Thomas contends his allegations show the officers "escalated the encounter" after he asked about the basis for his detention and began recording.[120]

In his complaint, Mr. Thomas alleges that, while checking passengers' tickets, Officer Clark asked him for identification.[121] He questioned the officer's motives, then said he had a ticket in his backpack—but he did not show it.[122] Shortly before exiting the train, he began recording with his phone.[123] The officers followed and stopped him

[117] (Third Am. Compl. 3, Doc. No. 77.) Although Mr. Thomas does not explain which officers count I is against, the only allegations of him recording are during his encounter with Officer Clark and Officer Morrill. (*See* Ex. to Third Am. Compl., Doc. No. 77-1 at 2.)

[118] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

[119] (Mot. 19, Doc. No. 79.)

[120] (Opp'n 4, Doc. No. 88.)

[121] (Ex. to Third Am. Compl., Doc. No. 77-1 at 2.)

[122] (*Id.*)

[123] (*Id.*) Mr. Thomas does not allege whether he was filming or recording audio.

on the platform, where they asked for identification and his ticket.[124] Mr. Thomas said "okay," then put his bike between his legs.[125] The officers then removed him from the bike and placed him in handcuffs.[126] At this point, either Officer Clark or Officer Morrill looked at Mr. Thomas's phone, noticed it was recording, and flipped it over.[127]

Mr. Thomas identifies no Tenth Circuit or Supreme Court case holding similar conduct constitutes unlawful retaliation under the First Amendment. He cites *Irizarry v. Yehia*[128] and argues the Tenth Circuit "recognizes a clearly established right to question police conduct and to record officers performing their duties in public."[129] But in *Irizarry*, the Tenth Circuit found an officer unlawfully retaliated against an individual for filming a traffic stop because the officer's intimidating actions (shining his light and driving his police car at the individual) could chill this protected First Amendment activity.[130] In addition, the officer responded to the scene precisely because the individual was recording and took actions serving no legitimate enforcement purpose.[131]

Unlike in *Irizarry*, Mr. Thomas does not allege facts suggesting the officers knew he was recording at the time they approached him on the train or detained him on the

[124] (*Id.*)

[125] (*Id.*)

[126] (*Id.*)

[127] (*Id.*)

[128] 38 F.4th 1282 (10th Cir. 2022).

[129] (Opp'n, Doc. No. 88 at 5.)

[130] *Irizarry*, 38 F.4th at 1292–93.

[131] *Id.* at 1293.

platform. His allegations suggest only that one officer noticed he was recording after the arrest. Where the key facts showing unlawful retaliation in *Irizarry* are not present here, any argument that *Irizarry* clearly establishes the unlawfulness of the officers' conduct fails. Accordingly, Mr. Thomas has not shown Officer Clark or Officer Morrill violated any clearly established right under the First Amendment. And he identifies no conduct by Officers Jorgensen or Leong related to his First Amendment claim. Therefore, the officers are entitled to qualified immunity and count I against them should be dismissed.

*2. Fourth Amendment Claims (Count II)*

Second, Mr. Thomas has not shown any officer's conduct constituted a clearly established constitutional violation under the Fourth Amendment. The Fourth Amendment protects individuals from "unreasonable searches and seizures."[132] In count II, Mr. Thomas claims the defendants violated these protections by: (a) taking photos of him without his consent; (b) detaining him without reasonable suspicion; (c) arresting him without probable cause;[133] (d) conducting an illegal search of his "belongings"; and (d) using "excessive force" during his arrest through "tight

---

[132] U.S. Const. amend. IV.

[133] Mr. Thomas claims the defendants unlawfully detained him without probable cause. (Third. Am. Compl. 3, Doc. No. 77). This appears to be a two-part claim for unlawful detention and arrest aimed at Officers Clark and Morrill. (*See* Opp'n, Doc. No. 88 at 3 (explaining claim for "unlawful seizure and arrest" is against "Clark and Morrill").) Where these portions of Mr. Thomas's opposition are consistent with the operative complaint, they are appropriate to rely on for this clarification. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (explaining it may be "appropriate for a court to consider additional facts or legal theories asserted in a response brief to a motion to dismiss if they were consistent with the facts and theories advanced in the complaint").

handcuffs."[134] But, as discussed below, because Mr. Thomas has not shown the unlawfulness of the officers' conduct was clearly established, they have qualified immunity and count II should be dismissed.

a. Photographs

Mr. Thomas fails to show the officers violated a clearly established Fourth Amendment right by photographing him without his consent. Mr. Thomas alleges Officers Jorgensen and Leong took pictures of him while standing on the public train platform, and Officer Morrill may have done so the following day.[135] He also alleges the officers (unclear who) took a picture of him in the police car after his arrest.[136] But Mr. Thomas cites no Tenth Circuit or Supreme Court authority, and the court is aware of none, finding such actions unlawful under the Fourth Amendment. Indeed, by the time of this conduct, the Tenth Circuit had concluded the use of a camera by law enforcement officers to capture activity in public view does not constitute a Fourth Amendment search.[137] And in 2013, the Supreme Court held that photographing an individual after an arrest does not violate the Fourth Amendment.[138] Because Mr.

---

[134] (Third Am. Compl. 3, Doc. No. 77.)

[135] (Ex. to Third Am. Compl., Doc. No. 77-1 at 1–2.)

[136] (*Id.* at 5.)

[137] *See United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000) (finding that recording "activity a person knowingly exposes to the public is not a subject of Fourth Amendment protection" where the cameras at issue could observe "only what any passerby would easily have been able to observe"), *judgment vacated on other grounds*, 531 U.S. 1033 (2000).

[138] *See Maryland v. King*, 569 U.S. 435, 461 (2013) (explaining that "courts have confirmed that the Fourth Amendment allows police to take certain routine

Thomas has not shown the officers violated his clearly established rights by photographing him in public and also after his arrest, the officers are entitled to qualified immunity.

b. Detention

Next, Mr. Thomas fails to show Officers Clark or Morrill violated clearly established law by detaining him.[139] "A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied"[140]—for example, an investigative detention known as a "Terry" stop.[141] Such stops are reasonable under the Fourth Amendment if the officer has reasonable suspicion of criminal activity.[142] In this circumstance, an officer may briefly detain the individual "in order to determine his identity or to maintain the status quo momentarily while obtaining more information."[143]

---

administrative steps incident to arrest" such as "book[ing], photograph[ing], and fingerprint[ing]" (citation omitted)).

139 As noted above, Mr. Thomas brings his claims for unlawful detention and unlawful arrest against Officers Clark and Morrill, not Officers Jorgensen or Leong.

140 *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989)) (alterations omitted).

141 *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (explaining that "[a]n investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment" (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

142 *See United States v. Sokolow,* 490 U.S. 1, 7 (1989).

143 *Oliver*, 209 F.3d at 1186 (quoting *Adams v. Williams,* 407 U.S. 143, 146 (1972)). The Fourth Amendment only protects against *unreasonable* seizures. *See Brower*, 489 U.S. at 599 ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'").

The defendants contend they have qualified immunity for stopping Mr. Thomas because they reasonably suspected him of violating Utah Code § 76-6-409(2), for riding the train without a ticket (i.e., for fare evasion).[144] In response, Mr. Thomas contends Officers Clark and Morrill do not have qualified immunity because he has the clearly established right to be free from "[d]etention without reasonable suspicion (Terry)" and the protection against a "[f]ailure-to-identify arrest predicated on unlawful detention (Brown)."[145]

But Mr. Thomas has not shown the officers violated his clearly established rights. According to the complaint, while checking passengers' tickets on the train, Officer Clark approached and asked Mr. Thomas for identification.[146] Mr. Thomas questioned Officer Clark's motives and asked if the officer had a reasonable suspicion of any crime justifying the request to see his identification.[147] But Mr. Thomas identifies no clearly established authority holding that an officer violates the Fourth Amendment merely by asking someone for identification, even without reasonable suspicion of criminal activity.[148] In fact, as the Tenth Circuit has explained: "The [Supreme] Court has made

---

[144] (Mot. 21–22, Doc. No. 79.) Utah Code § 76-6-409(2) criminalizes fare evasion and provides that a person "commits theft of service" if they "avoid due payment" for a service they know "is available only for compensation." Utah Code Ann. § 76-6-409(2)(a).

[145] (Opp'n, Doc. No. 88 at 6.) Presumably, Mr. Thomas is referring to *Terry v. Ohio*, 392 U.S. 1 (1968), and *Brown v. Texas*, 443 U.S. 47 (1979).

[146] (Ex. to Third Am. Compl., Doc. No. 77-1 at 2.)

[147] (*Id.*)

[148] Neither *Terry* nor *Brown* held this, as discussed further below.

clear . . . that a police officer may ask an individual to volunteer his identity without implicating the Fourth Amendment."[149]

Similarly, Mr. Thomas has not shown Officer Clark's or Officer Morrill's subsequent actions violated his clearly established rights. After Officer Clark's initial request for identification, Mr. Thomas told the officer he had a ticket in his backpack.[150] But instead of providing the ticket, he exited the train.[151] Following him, the officers stopped Mr. Thomas on the platform, again requesting his identification and his ticket.[152] And, according to the complaint, the officers articulated their reason for detaining Mr. Thomas: he did not have proof of a ticket.[153]

Mr. Thomas fails to identify any case where the court found such actions clearly constituted an unlawful detention under the Fourth Amendment. He references *Terry v. Ohio*[154] and *Brown v. Texas*,[155] but he does not explain how these cases show the officers' conduct was clearly established as unlawful. In *Terry*, the Court found the officer lawfully stopped a person for investigative purposes where the officer had a

---

[149] *See United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006) (citing *INS v. Delgado*, 466 U.S. 210, 216 (1984)).

[150] (Ex. to Third Am. Compl., Doc. No. 77-1 at 2.)

[151] (*Id.*) Mr. Thomas alleges he explained to Officer Clark that he did not want to miss his stop and asked if they could get off the train together to show the ticket. (*Id.*) Either way, Mr. Thomas exited the train without showing his ticket.

[152] (*Id.*)

[153] (*Id.* at 4.)

[154] 392 U.S. 1.

[155] 443 U.S. 47.

reasonable, articulable suspicion of criminal activity.[156] And in *Brown*, the Court found the officer lacked reasonable suspicion for a stop because the officer was "unable to point to any facts" and, instead, merely said the situation "looked suspicious."[157] Neither case involved facts or circumstances similar to Mr. Thomas's.

Indeed, in his complaint, Mr. Thomas identifies facts supporting a reasonable suspicion of fare evasion—he said he had a ticket, but did not provide it, then he exited the train. Mr. Thomas fails to identify a case where a court concluded an officer acting under similar circumstances lacked reasonable suspicion to conduct an investigatory stop, in violation of the Fourth Amendment. In other words, Mr. Thomas has not shown Officers Clark and Morrill violated his clearly established rights by detaining him. Accordingly, the officers are entitled to qualified immunity on this claim.

c. Arrest

Likewise, Mr. Thomas has not shown Officers Clark and Morrill violated his clearly established rights by arresting him. To be reasonable under the Fourth Amendment, a warrantless arrest must be supported by probable cause.[158] "Police officers have probable cause to arrest if 'the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or

---

[156] *See Terry,* 392 U.S. at 30.

[157] 443 U.S. at 51–52.

[158] *See Donahue v. Wihongi*, 948 F.3d 1177, 1189 (10th Cir. 2020); *see also Buck v. City of Albuquerque,* 549 F.3d 1269, 1286 (10th Cir. 2008) ("In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual." (quoting *Fogarty v. Gallegos,* 523 F.3d 1147, 1158–59 (10th Cir. 2008))).

was committing an offense.'"[159] "[C]ourts assess probable cause 'from the standpoint of an objectively reasonable police officer' under the totality of the circumstances."[160]

The defendants contend they had probable cause to arrest Mr. Thomas for interfering with a lawful detention in violation of Utah Code § 76-8-305(2).[161] The defendants explain that, upon detaining Mr. Thomas on the train platform for suspected fare evasion, Officers Clark and Morrill demanded his identification and ticket.[162] Despite this instruction, Mr. Thomas mounted his bike, giving the officers probable cause to believe he was impeding the lawful detention.[163] In response, Mr. Thomas generally contends Officers Clark and Morrill do not have qualified immunity because he alleges they violated his "clearly established right[]" to be free from "[a]rrest without probable cause (Beck v. Ohio)."[164]

Mr. Thomas has not shown the officers violated clearly established law by arresting him. After the officers again asked Mr. Thomas for identification and his ticket on the platform, Mr. Thomas alleges he said "okay," then put his bike between his

---

[159] *Donahue*, 948 F.3d at 1189 (quoting *Adams*, 407 U.S. at 148).

[160] *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

[161] (Mot. 23–26, Doc. No. 79.) Utah Code § 76-8-305 criminalizes interfering with an arrest or detention where the individual knows, or reasonably should know, the officer is "seeking to effect a lawful arrest or detention" and the person refuses to comply with an order necessary to effect it or otherwise impedes the arrest or detention. Utah Code Ann. § 76-8-305(2)(a)–(b).

[162] (Mot. 26, Doc. No. 79.)

[163] (*Id.*)

[164] (Opp'n, Doc. No. 88 at 6.) Mr. Thomas appears to be referring to *Beck v. Ohio*, 379 U.S. 89 (1964).

legs.[165] He claims his intent was to hold the bike up and to have a free hand to remove his backpack.[166] But he does not allege the officers knew of his intent—that he explained it to them. Both officers then pulled his hands from the backpack shoulder straps, removed him from his bike, and placed him in handcuffs.[167] Mr. Thomas subsequently told them he was trying to show his ticket.[168] And Officer Morrill responded, "no[,] you tried to run."[169]

Mr. Thomas identifies no cases in which a court found an officer under similar circumstances lacked probable cause to arrest for refusing to comply with a lawful order necessary to effect a detention.[170] Mr. Thomas references *Beck v. Ohio*,[171] but it is unclear why. In *Beck*, the Supreme Court found officers lacked probable cause to arrest an individual for a crime where the officers knew only what the individual looked like and that he had a previous criminal record.[172]

Here, even according to the facts Mr. Thomas alleges, the officers stopped Mr. Thomas after he said he had a ticket, did not show it, exited the train, and then mounted his bike when asked again for his identification and ticket. *Beck* bears no resemblance

---

[165] (Ex. to Third Am. Compl., Doc. No. 77-1 at 3.)

[166] (*Id.*)

[167] (*Id.*)

[168] (*Id.*)

[169] (*Id.*)

[170] *See* Utah Code Ann. § 76-8-305(2)(a)–(b).

[171] 379 U.S. 89.

[172] *See Beck*, 379 U.S. at 96–97.

and would not have informed these officers they were doing anything unlawful.[173] Indeed, the Tenth Circuit has found an officer reasonably believed he had probable cause to arrest an individual for violating Utah Code § 76-8-305(2) when the individual refused to present identification after the officer asked for it during an investigative detention.[174] Accordingly, Mr. Thomas has not shown Officers Clark and Morrill violated his clearly established rights by arresting him. The officers have qualified immunity on this claim.

d. Search Incident to Arrest

Mr. Thomas also has not shown the officers violated his clearly established rights by searching him and his belongings after his arrest.[175] "[T]he Fourth Amendment allows officers to search individuals without a warrant if that search is incident to the [individual's] lawful arrest," to "protect officers and prevent the destruction of evidence."[176] This "search-incident-to-arrest doctrine allows police officers to search the person of an arrestee whom officers have lawfully arrested and a closed container,

[173] *See Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("To be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (citation omitted)).

[174] *See Oliver*, 209 F.3d at 1189.

[175] (Third Am. Compl. 3, Doc. No. 77.) Presumably, this claim is directed at Officers Morrill and Clark. Mr. Thomas alleges Officer Morrill initially searched him and his backpack. (Ex. to Third Am. Compl., Doc. No. 77-1 at 3.) But he also alleges Officer Clark was involved in searching his person, and another officer (unclear who) was involved in searching his backpack. (*Id.* at 3, 5.)

[176] *Miller v. Bear*, 781 F. App'x 745, 752 (10th Cir. 2019) (unpublished) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

like a backpack, on the arrestee's person."[177] Mr. Thomas alleges that, after his arrest, Officers Morrill and Clark searched his person and backpack.[178] But Mr. Thomas identifies no legal authority supporting the premise that an officer's search of a suspect's person and backpack under these circumstances is unlawful. Where Mr. Thomas fails to demonstrate the officers violated his clearly established rights by searching him and his belongings incident to his arrest, they have qualified immunity on this claim.

e. Excessive Force

Finally, Mr. Thomas has not shown the officers' use of handcuffs during his arrest violated his clearly established rights.[179] "Federal excessive force claims are governed by an objective standard."[180] While unduly tight handcuffing may constitute excessive force in some circumstances, the plaintiff must allege the handcuffing caused "some actual injury that is not de minimis,"[181] and the "officer ignored [the] plaintiff's timely

---

[177] *United States v. Ulibarri*, 723 F. Supp. 3d 1062, 1113 (D.N.M. 2024); *see also Chimel v. California*, 395 U.S. 752, 763 (1969) (explaining that a search incident to arrest may include "the arrestee's person and the area within his immediate control" (citation omitted)); *United States v. Herrera*, 810 F.2d 989, 990–91 (10th Cir. 1987) (holding search of briefcase in person's possession after his arrest was lawful as search incident to arrest).

[178] (Ex. to Third Am. Compl., Doc. No. 77-1 at 3.)

[179] (*See* Third Am. Compl. 3, Doc. No. 77 (claiming Fourth Amendment violation by using "excessive force" through "tight handcuffs").)

[180] *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005).

[181] *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007)).

complaints (or was otherwise made aware) that the handcuffs were too tight."[182] Mr. Thomas alleges his handcuffing caused "physical pain," "bruising," and unspecified injuries to his wrists and shoulders.[183] But he does not contend he complained or otherwise made the officers aware the handcuffs were too tight. Rather, he complained the handcuffs prevented him from retrieving his identification.[184]

Mr. Thomas identifies no cases in which courts have found such conduct unlawful under the Fourth Amendment violation. He cites *Dixon v. Richer*[185] and *Casey v. City of Federal Heights*.[186] But in *Dixon*, the Tenth Circuit held the deputies' use of force during an investigatory stop was unreasonable because they kicked the individual, struck him in the stomach with a flashlight, then choked and beat him solely because they reasonably suspected him of carrying a weapon.[187] And in *Casey*, the Tenth Circuit held the officers' use of force was unreasonable because one officer tackled the arrestee and another officer tased him without warning immediately upon arriving on the

---

[182] *Cortez*, 478 F.3d at 1129.

[183] (*See* Third Am. Compl. 4, Doc. No. 77.)

[184] (Ex. to Third Am. Compl., Doc. No. 77-1 at 4.).

[185] 922 F.2d 1456 (10th Cir. 1991).

[186] 509 F.3d 1278 (10th Cir. 2007). Mr. Thomas also cites *Graham v. Connor*, 490 U.S. 386 (1989), for the proposition that "force must be objectively reasonable." (Opp'n, Doc. No. 88 at 4, 6.) But the Supreme Court in *Graham* did not decide whether any officer's use of force was unconstitutional. Instead, the Court concluded excessive force claims must be analyzed by an "'objective reasonableness' standard, rather than under a substantive due process standard." *See Graham*, 490 U.S. at 388. Accordingly, *Graham* does not clearly establish the unlawfulness of the officers' actions here.

[187] *See Dixon*, 922 F.2d at 1462–63.

scene, even though he was not threatening or fleeing and the crime was not severe.[188] None of the facts showing excessive force in *Dixon* and *Casey* are present here. Neither case clearly establishes the officers violated Mr. Thomas's rights. Accordingly, Mr. Thomas fails to show the officers violated clearly established law with their use of handcuffs during his arrest. Therefore, the officers are entitled to qualified immunity.

Because qualified immunity bars each of Mr. Thomas's claims under the Fourth Amendment, count II against Officers Jorgensen, Leong, Clark, and Morrill should be dismissed.

*3. Fifth Amendment Claim (Count III)*

Next, Mr. Thomas has not shown any officers violated a clearly established right under the Fifth Amendment. In count III, Mr. Thomas claims the defendants violated his right to due process "through coercive conduct during [his] detention and arrest."[189] But he fails to explain how or the factual basis for this claim. Nor does he cite any authority showing the officers violated any clearly established due process right. Indeed, the Fifth Amendment's due process clause "applies only to action by the federal government," not state officers.[190] And while the Fifth Amendment's self-incrimination clause applies

---

[188] *See Casey*, 509 F.3d at 1285–86.

[189] (Third. Am. Compl. 3, Doc. No. 77.)

[190] *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). Although the Fourteenth Amendment's due process clause applies to actions by state governments, *see id.*, count III is not properly construed as a Fourteenth Amendment claim where it is based entirely on allegations relating to Mr. Thomas's Fourth Amendment detention and arrest claims. *See Turner v. Houseman*, 268 F. App'x 785, 789 (10th Cir. 2008) (unpublished) (explaining the Fourth Amendment ensures "any arrest or physical incarceration attendant to a criminal prosecution is reasonable," and the "more general procedural and substantive due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically

to the states and prohibits state officials from using compelled statements against an individual in criminal proceedings,[191] Mr. Thomas does not allege he gave a compelled, self-incriminating statement. Where Mr. Thomas has not shown the officers violated any clearly established Fifth Amendment rights, the officers are entitled to qualified immunity and count III should be dismissed.[192]

*4. Fourteenth Amendment Claim (Count IV)*

Finally, Mr. Thomas has not shown any officers violated a clearly established Fourteenth Amendment right to equal protection.[193] The Fourteenth Amendment prohibits any state from denying "to any person within its jurisdiction equal protection of the laws."[194] This "prohibits state and local governments from treating similarly situated

---

addressed by the Fourth Amendment" (citation modified)); *see also Champion v. McCalister*, No. 23-6141, 2024 U.S. App. LEXIS 16068, at *9 n.5 (10th Cir. July 2, 2024) (unpublished) (finding Fourteenth Amendment claims properly dismissed where the allegations related to arrest, search, and seizure implicated Fourth Amendment rights).

[191] *See Chavez v. Martinez*, 538 U.S. 760, 766 (2003) ("The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that '[n]o person . . . shall be compelled in any criminal case to be a witness against himself.'" (quoting U.S. Const. amend V) (emphasis omitted)); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial.").

[192] Count III may also be dismissed as abandoned. The defendants argued the inapplicability of both the Fifth Amendment's due process clause and self-incrimination clause. (Mot. 27–28, Doc. No. 79.) Yet Mr. Thomas failed to respond. (*See generally* Opp'n, Doc. No. 88); *see also Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1154, 1168 (D. Utah 2018) (deeming claims abandoned where party failed to respond to opposing party's arguments for dismissal).

[193] (*See* Third Am. Compl. 3, Doc. No. 77.)

[194] U.S. Const. amend. XIV, § 1.

persons differently."[195] Among other things, they may not selectively enforce the law "based on considerations such as race."[196] Selective enforcement violates the equal protection clause if "the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect."[197]

Fairly construed, Mr. Thomas asserts a selective enforcement claim. He claims the defendants violated his right to equal protection by targeting and profiling him "base[d] on his appearance," and treating him "more harshly than others."[198] In the context of selective enforcement equal protection claims, the Tenth Circuit has explained that the discriminatory purpose element "requires a showing that discriminatory intent was 'a motivating factor in the decision' to enforce the law against the plaintiff."[199] And to satisfy the discriminatory effect element, the plaintiff must allege facts "showing that a similarly-situated individual of another race could have been, but was not, stopped or arrested" for committing the same offense "for which the plaintiff was stopped or arrested.[200]

---

[195] *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003).

[196] *Whren v. United States*, 517 U.S. 806, 813 (1996).

[197] *Detreville v. Gurevich*, No. 24-1427, 2025 U.S. App. LEXIS 16621, at *19–20 (10th Cir. July 8, 2025) (unpublished) (quoting *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003)).

[198] (Third Am. Compl. 3, Doc. No. 77.)

[199] *Detreville*, 2025 U.S. App. LEXIS 16621, at *20 (quoting *Marshall*, 345 F.3d at 1168).

[200] *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (citation modified).

Mr. Thomas identifies no Tenth Circuit or Supreme Court case finding an officer acting under similar circumstances violated the Fourteenth Amendment's equal protection clause.[201] Mr. Thomas alleges he is black and was "the only non-white person" on the train the day of his arrest.[202] And he also alleges Officer Clark only asked other passengers for their tickets but asked him for his identification.[203] But he does not allege discriminatory effect. He does not allege any of the white passengers failed to present a valid ticket upon request. And he does not allege any white passenger evaded law enforcement action after failing to show a ticket—that only Mr. Thomas was detained while a white passenger was free to leave. Where Mr. Thomas fails to identify a case showing similar facts constituted a violation of clearly established rights through selective enforcement, the officers are entitled to qualified immunity. Therefore, count IV against them should also be dismissed.

---

[201] Mr. Thomas also abandoned his Fourteenth Amendment equal protection claim. Raising qualified immunity, the defendants argued Mr. Thomas did not allege a clearly established constitutional violation. (Mot. 28–34, Doc. No. 79.) Mr. Thomas did not respond to these arguments. (*See generally* Opp'n, Doc. No. 88.) Instead, he improperly attempted to amend his Fourteenth Amendment claim through his opposition brief. (*See id.* at 5 (purporting to assert Fourteenth Amendment claims for false or misleading affidavits and procedural due process).) This is an alternative basis for dismissal. *See Mitchell*, 355 F. Supp. 3d at 1154, 1168.

[202] (Ex. to Third Am. Compl., Doc. No. 77-1 at 2.)

[203] (*Id.*) Even if the court were to assume an officer violates the Fourteenth Amendment by only asking the sole black person on a train for identification, Mr. Thomas has not alleged a discriminatory purpose sufficient to show the officer violated his clearly established rights. To show discriminatory purpose, a plaintiff must meet a high bar. *See Blackwell v. Strain*, 496 F. App'x 836, 840 (10th Cir. 2012) (unpublished). Even comprehensive statistical evidence showing a pattern of discriminatory impact is rarely enough—the plaintiff must also show the decisionmakers in his case acted with discriminatory purposes. *Id.* Mr. Thomas has made no such allegations or showing.

**RECOMMENDATION**

Because Mr. Thomas fails to state a plausible claim for relief against the UTA Police Department, and Officers Jorgensen, Leong, Clark, and Morrill are entitled to qualified immunity, the undersigned recommends the district judge grant the motion to dismiss[204] and dismiss this action with prejudice. The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[205]

DATED this 28th day of July, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[204] (Doc. No. 79.)

[205] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).