IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DARIEL DENZEL THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>UTAH TRANSIT AUTHORITY POLICE DEPARTMENT; RYAN MORRILL; JOEY CLARK; TRACY JORGENSEN; and CONRAD LEONG,<br><br>Defendants. | ORDER ADOPTING REPORT AND RECOMMENDATION<br><br>Case No. 2:24-cv-00736-JNP-DAO<br><br>Chief District Judge Jill N. Parrish<br>Magistrate Judge Daphne A. Oberg |

Plaintiff Dariel Denzel Thomas, proceeding pro se, brings claims under 42 U.S.C. § 1983 against the Utah Transit Authority Police Department and officers Ryan Morrill, Joey Clark, Conrad Leong, and Tracy Jorgensen for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights. ECF No. 77, pp. 1–5. The defendants filed a motion to dismiss for failure to state a claim. ECF No. 79. Magistrate Judge Daphne A. Oberg issued a Report and Recommendation in which she recommended that the action be dismissed with prejudice for failure to state a claim upon which relief may be granted. ECF No. 93, p. 11.[1] Mr. Thomas filed an objection in which he raises additional factual allegations, renews his request for appointed

[1] This court initially adopted Judge Oberg's Report and Recommendation based on an apparent lack of objections (ECF No. 96). This court later learned that Mr. Thomas' objection to the Report and Recommendation was timely received on August 25, 2026, though it was not docketed until August 27, 2026 (ECF No. 97). The court therefore struck its order adopting the Report and Recommendation and now considers Mr. Thomas' objection in full (ECF No. 98). Mr. Thomas filed a motion to amend the order adopting the Report and Recommendation (ECF No. 99), but that motion was rendered moot when the order adopting the Report and Recommendation was stricken from the record.

counsel, raises new claims about a warrant allegedly issued in December 2022, and objects to Judge Oberg's findings that: (1) reasonable suspicion supported his detention; (2) probable cause existed for his arrest; (3) the Defendants did not use excessive force and did not conduct an unlawful search; (4) the Defendants did not retaliate against him for exercising his First Amendment rights; and (5) the Defendants are entitled to qualified immunity. For the following reasons, the court DISMISSES Mr. Thomas' claims with prejudice and DENIES Mr. Thomas' August 27, 2026, motion (ECF No. 99) AS MOOT.

**BACKGROUND**

When reviewing a motion to dismiss, the court "accept[s] as true all well-pleaded factual allegations in the complaint." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). Though the parties have both submitted additional factual exhibits, Judge Oberg determined that the Defendants' motion to dismiss can be resolved by reference only to Mr. Thomas' amended complaint and attached exhibits, and this court agrees. *See* ECF No. 93, pp. 2, 10; *Brown v. City of Tulsa*, 124 F.4th 1251, 1263-64 (10th Cir. 2025) (a court deciding a motion to dismiss may consider documents attached to the complaint as exhibits).

Mr. Thomas alleges that he encountered Officers Jorgensen and Leong on a Utah Transit Authority (UTA) train on August 25, 2022. ECF No. 77–1, p. 1. Officer Jorgensen began asking passengers for tickets; when Mr. Thomas showed Officer Jorgensen his ticket, Officer Jorgensen explained that the ticket had expired. *Id*. Both officers and Mr. Thomas exited the train at the next stop, at which point Officer Jorgensen asked Mr. Thomas to provide identification and remove his mask. *Id*. Mr. Thomas provided identification but objected to removing his mask. *Id*. Officer Jorgensen and Officer Leong then confirmed that Mr. Thomas had no active warrants and took photos of Mr. Thomas, to which Mr. Thomas also objected. *Id*. Finally, Officer

Jorgensen issued Mr. Thomas a citation for riding the train without a valid ticket, which Mr. Thomas refused to sign. *Id*.

The next day, Mr. Thomas encountered Officers Morrill and Clark on a UTA platform. *Id*. at 2. Mr. Thomas allegedly noticed the officers watching him. *Id*. He then approached the officers and began a conversation about guns. *Id*. When Officer Morrill took out his phone, Mr. Thomas believed that his photo was being taken and asked Officer Morrill to stop. *Id*. Officer Morrill put his phone away. *Id*. All three men boarded the next train, and the officers began checking passengers' tickets. *Id*. Mr. Thomas alleges that Officer Clark approached only passengers on one side of the train, as if he were rushing to get to a particular passenger, and that Officer Clark asked only Mr. Thomas for his identification. *Id*. Mr. Thomas, who alleges that he was the "only non-white person" on the train, objected to this request. *Id*. Mr. Thomas further alleges that Officer Clark repeatedly requested Mr. Thomas' identification while pretending not to hear Mr. Thomas' objections. *Id*. At this point, the train approached Mr. Thomas' stop, and Mr. Thomas asked whether he and Officer Clark could get off the train together. *Id*. Mr. Thomas alleges that Officer Clark again pretended not to hear him. *Id*. All three men exited the train at the next stop, and Mr. Thomas began recording the interaction with his phone. *Id*. Officers Morrill and Clark apparently did not realize Mr. Thomas was recording the interaction. *Id*. At 3.

On the platform, Mr. Thomas alleges that the officers followed him as he walked off the train and across the platform, and one of them again requested his identification. *Id*. at 2. Mr. Thomas reports that the two officers then stood in front of and beside him. *Id*. at 2–3. Mr. Thomas was traveling with his bicycle and alleges that he put it between his legs in order to reach for his backpack to retrieve his ticket. *Id*. at 3. When Mr. Thomas mounted his bicycle, the officers grabbed his arms and removed him from the bicycle. *Id*. Mr. Thomas alleges that they did so

forcefully and "came close to dislocating" his shoulders. *Id*. In the process of arresting Mr. Thomas, one of the officers retrieved a knife from Mr. Thomas's pocket. *Id*. One officer apparently saw that Mr. Thomas' phone was recording and flipping it over (Mr. Thomas's complaint does not clarify whether the phone was taking an audio or video recording). *Id*. The officers also searched Mr. Thomas' backpack, stating that they smelled marijuana. *Id*. Finally, the officers attempted to remove Mr. Thomas' mask, at which point Mr. Thomas objected and stated that doing so violated his religious rights. *Id*.

Mr. Thomas argues that the Defendants violated his First Amendment rights, by retaliating against him for recording the interaction; his Fourth Amendment rights, by taking photos of him, detaining him, searching his belongings, and using excessive force; his Fifth Amendment rights, through unspecified "coercive conduct," and his Fourteenth Amendment rights, by treating him differently from other passengers. ECF No. 77, p. 3. As Judge Oberg noted, Mr. Thomas raised new claims in his opposition to the defendants' motion to dismiss, but such claims are procedurally barred. ECF No. 93, p. 9.

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(C), the court "shall make a de novo determination of those portions of the report . . . or recommendations to which objection is made." However, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Though courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements," the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). As noted above, Mr. Thomas' objection to Judge Oberg's Report and

Recommendation raises additional factual allegations, renews his request for appointed counsel, raises new claims about a warrant allegedly issued in December 2022, and objects to Judge Oberg's findings that: (1) reasonable suspicion supported his detention; (2) probable cause existed for his arrest; (3) the Defendants did not use excessive force and did not conduct an unlawful search; (4) the Defendants did not retaliate against him for exercising his First Amendment rights; and (5) the Defendants are entitled to qualified immunity.[2] The court reviews those portions of the report and recommendation de novo.

In reviewing the relevant motions to dismiss, the court applies Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett*, 706 F.3d at 1235.

## ANALYSIS

### I. Issues Not Properly Raised in Mr. Thomas' Objection

Mr. Thomas's objection to Judge Oberg's report raises a number of issues not properly considered at this stage of review. First, Mr. Thomas purports to provide additional factual "context," arguing that his failure to comply with procedural rules should be excused given his status as a pro se plaintiff. ECF No. 97, pp. 3–4. But the Tenth Circuit has "has repeatedly insisted

[2] Mr. Thomas does not object to Judge Oberg's conclusion that his Fourteenth Amendment claim should be dismissed.

that pro se parties follow the same rules of procedure that govern other litigants." *Garrett*, 425 F.3d at 840. The court therefore cannot consider factual allegations discussed for the first time in Mr. Thomas' objection.

Mr. Thomas also "renews his request for appointment of counsel." *Id*. at 6. Mr. Thomas' request has already been raised multiple times in these proceedings and was previously resolved by Judge Oberg's January 2025 Memorandum Decision and Order denying his motion for a federal civil rights lawyer and Judge Oberg's February 2025 Memorandum Decision and Order denying his motion for appointed counsel. *See* ECF Nos. 4, 20, 23, 30, 37. This issue was not raised in Defendants' motion to dismiss or in Mr. Thomas' opposition to that motion. Thus, this court cannot consider it.

Finally, Mr. Thomas purports to bring a new claim arising out of an allegedly unlawful warrant issued in December 2022. ECF No. 97, p. 19. This claim was raised for the first time in Mr. Thomas' opposition to the Defendants' motion to dismiss, where he provided minimal detail, alleging only that "a warrant was later issued," that he did not possess the warrant, and that he believed that the warrant erroneously stated that his whereabouts were unknown. ECF No. 88, p. 4. As discussed above, new claims are not properly raised in opposition to a motion to dismiss, and pro se plaintiffs are not excused from following procedural rules. Furthermore, the minimal details provided in Mr. Thomas' opposition were not sufficient for Judge Oberg to identify the warrant at issue, much less consider Mr. Thomas' claim, which he details for the first time in his objection. *See* ECF No. 88, pp. 3–4; ECF No. 97, pp. 19–22. This court therefore cannot consider Mr. Thomas' new claim relating to the December 2022 warrant.

## II. Reasonable Suspicion Supported Mr. Thomas' Detention

Officers Morrill and Clark had reasonable suspicion of criminal activity such that their detention of Mr. Thomas was lawful. Officers may briefly detain an individual, including for the purpose of determining his identity, if they have a reasonable suspicion of criminal activity. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). At the same time, "a police officer may ask an individual to volunteer his identity without implicating the Fourth Amendment." *United States v. Villagrana-Flores*, 467 F.3d 1269, 1275 (10th Cir. 2006). Mr. Thomas admits that he stated that he had a ticket to ride the train but exited the train without providing it, at which point the officers stopped him and again requested that he provide his ticket. ECF No. 77-1, p. 3. As Judge Oberg explained, these facts gave rise to reasonable suspicion that Mr. Thomas engaged in fare evasion in violation of Utah Code § 76-6-409(2). ECF No. 93, pp. 22–24.

Mr. Thomas objects that the Defendants relied on an unconfirmed hunch. ECF No. 97, p. 12. However, Judge Oberg's report explains that the Defendants had specific facts supporting a reasonable suspicion of fare evasion: Mr. Thomas refused to provide a ticket and left the train. ECF No. 93, p. 24. Mr. Thomas cites his own declarations that he had a ticket, made during his interaction with Officers Morrill and Clark, to argue that no reasonable suspicion existed. ECF No. 97, p. 13. However, he cites no authority showing that such declarations invalidate the reasonable suspicion created by his actions. This court agrees with Judge Oberg that reasonable suspicion existed when Officers Morrill and Clark detained Mr. Thomas.

## III. Probable Cause Existed for Mr. Thomas' Arrest

Mr. Thomas further objects that the encounter "rapidly escalated" when Officers Morrill and Clark removed him from his bicycle to arrest him and that the arrest itself lacked probable cause. ECF No. 97, pp. 14, 7. Both arguments fall short. "Police officers have probable cause to arrest if 'the facts and circumstances within the arresting officers' knowledge and of which they

had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Donahue v. Wihongi*, 948 F.3d 1177, 1189 (10th Cir. 2020) (citation omitted). This court agrees with Judge Oberg that probable cause existed for Mr. Thomas' arrest.

Mr. Thomas admits that that he had already refused to provide his identification despite repeated requests by Officer Clark on the train; that he exited the train and continued to walk away from the officers on the platform; that the officers continued to request his ticket and identification; and that he put his bicycle between his legs. ECF No. 77-1, p. 3. At that point, Officers Morrill and Clark removed him from the bicycle and arrested him, and Officer Morrill explained that, at least in Officer Morrill's view, Mr. Thomas had tried to run from them. *Id*. Judge Oberg noted that Mr. Thomas failed to identify any cases in which a court has found that officers lacked probable cause where a plaintiff was arrested for refusing to comply with a lawful order necessary to effect detention. ECF No. 93, p. 26. In fact, the Tenth Circuit has found that, in the context of a lawful detention based on reasonable suspicion, refusing to provide identification establishes probable cause for an arrest for violating Utah Code § 76-8-305(2) (interfering with arrest or detention).

Mr. Thomas objects that affidavits submitted by Officers Morrill and Clark may be inconsistent. ECF No. 97, p. 7. As discussed above, Judge Oberg and this court considered only the facts alleged by Mr. Thomas himself in deciding a motion to dismiss, and those facts establish that Mr. Thomas repeatedly failed to provide identification after being asked to do so and mounted his bicycle after leaving the train. Thus, any alleged inconsistencies in the officers' affidavits are irrelevant. The court agrees with Judge Oberg that Officers Morrill and Clark had probable cause to arrest Mr. Thomas.

## IV. Officers Morrill & Clark Did Not Use Excessive Force; They Are Entitled to Qualified Immunity With Respect to Their Search of Mr. Thomas' Backpack

Mr. Thomas fails to state a claim for violations of his Fourth Amendment rights through the use of excessive force or through an unlawful search.

*A. Excessive Force*

Mr. Thomas objects to Judge Oberg's finding that Officers Morrill and Clark did not use excessive force when they arrested him. *Id*. at 15. First, Mr. Thomas argues that the underlying detention was unlawful. This court has already explained that the detention was lawful, so this objection is unavailing. Next, Mr. Thomas argues that Officers Morrill and Clark used objectively unreasonable force. *Id*. at 16. Mr. Thomas' objection misconstrues the Supreme Court's analysis in *Graham v. Connor*, which directs courts to consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Mr. Thomas misapplies these factors. First, while fare evasion is not an especially severe crime, Mr. Thomas is incorrect to suggest that his purported innocence reduces the severity of the crime at issue. ECF No. 97, p. 16. Addressing the second factor, Mr. Thomas argues that he did not present a threat to public safety. *Id*. However, Judge Oberg never found that Mr. Thomas posed a threat to public safety, so this argument is of limited relevance. ECF No. 93, p. 29. Finally, Mr. Thomas argues that he was not fleeing. ECF No. 97, p. 17. However, Mr. Thomas' own account indicates that he mounted his bicycle after exiting the train and walking away from Officers Morrill and Clark. ECF No. 77-1, p. 3. Moreover, Mr. Thomas' description of the force used by the officers indicates that the officers: (1) removed his backpack; (2) removed him from his bike; (3) pushed him against a trash can; and (4) handcuffed him. Though Mr. Thomas claims that he was not fleeing, he admits to mounting his bicycle after walking away from the officers and does not allege

that the force used by the officers was more than necessary to detain him if he were attempting to evade arrest.

Finally, Mr. Thomas fails to allege "some actual injury that is not de minimis, be it physical or emotional." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008). His complaint states that the officers were "close" to dislocating his shoulders if they "continued on the path of bending them the way they were" but does not allege that his shoulders were actually dislocated, nor does he allege a specific injury beyond "physical bodily harm and pain." ECF No. 77-1, p. 3. To the extent Mr. Thomas claims that his handcuffing caused physical pain and bruising, he fails to show that his injuries were not de minimis and that an officer was aware that the cuffs were too tight and ignored the problem. *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) ("[U]nduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."). Thus, the court agrees with Judge Oberg that Mr. Thomas has not stated a claim for the excessive use of force.

*B. Unlawful Search*

Officers may conduct a search without a warrant if it is incident to a lawful arrest and "only include[s] 'the arrestee's person and the area within his immediate control—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.'" *Arizona v. Gant*, 556 U.S. 332, 339 (2009) (citation omitted). Mr. Thomas' arrest was supported by probable cause, and Officers Morrill and Clark therefore had legal basis to search both his person and the area within his immediate control. *Id*. The Tenth Circuit has emphasized that a search incident to arrest does not extend to an arrestee's bag if the arrestee could not actually gain possession of a weapon or destructible evidence from the bag at the time of the search. *U.S. v. Knapp*, 917 F.3d 1161, 1168 (10th Cir. 2019). Mr. Thomas was in the process of accessing his

backpack at the time he was arrested, but Officers Morrill and Clark did not search the bag until Mr. Thomas had been handcuffed and could not have accessed it. ECF No. 77-1, p. 3. Thus, the search was not justified as a search incident to arrest.

The Defendants are nonetheless entitled to qualified immunity. Mr. Thomas states that Officers Morrill and Clark told him that they smelled marijuana and therefore had probable cause to search his backpack. *Id*. at 3–4. Mr. Thomas takes issue with this statement, emphasizing that no marijuana was found in his backpack. ECF No. 97, pp. 18–19. However, the Tenth Circuit has stated that it is "well-established law that 'the odor of marijuana by itself is sufficient to establish probable cause.'" *United States v. Pittman*, 782 F. App'x 663, 665–66 (10th Cir. 2019). Mr. Thomas has not identified any cases in which the Tenth Circuit or any other court found that probable cause based on the smell of marijuana is invalidated if no marijuana is found. As Judge Oberg explained, Mr. Thomas must identify legal authority supporting the premise that a search under these circumstances is unlawful in order to overcome Officers Morrill and Clark's qualified immunity defense. ECF No. 93, p. 28. Mr. Thomas' objection does not provide any such authority. This court therefore finds that Mr. Thomas' claim that his backpack was unlawfully searched should be dismissed.

## V. First Amendment Retaliation

Mr. Thomas claims that he was subject to retaliation because he exercised his First Amendment right to record in a public space. ECF No. 77, p. 3. Though recording officers performing their duties is a protected activity, Mr. Thomas must also show: (1) that Officers Morrill and Clark's adverse actions caused him to suffer such an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (2) that the adverse actions were substantially motivated as a response to Mr. Thomas' constitutionally protected conduct. *See*

*Irizarry v. Yehia,* 38 F.4th 1282, 1289 (10th Cir. 2022); *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007). Mr. Thomas' own account indicates that an unidentified officer, presumably either Officer Morrill or Officer Clark, discovered that Mr. Thomas' phone was recording their interaction only after Mr. Thomas was arrested. ECF No. 77-1, p. 3. At that point, Mr. Thomas had already been detained and arrested and was seemingly in the process of being searched. *Id*. Thus, Mr. Thomas has not identified actions taken by either officer that were substantially motivated by Mr. Thomas' recording the interaction, and his claim should be dismissed.

In his objection, Mr. Thomas alleges that Officer Leong retaliated against him by taking photos of him during the August 25, 2022, encounter. ECF No. 97, pp. 9–11. However, Mr. Thomas did not raise this issue in his opposition to Defendants' motion to dismiss, which discusses only Officer Clark's attempted removal of his mask following his arrest and the officers' alleged retaliation against him after he questioned the basis for his detention—both of which occurred during the August 26, 2022, encounter. ECF No. 88, pp. 4–5. Thus, the court cannot properly consider Mr. Thomas' allegation regarding Officer Leong's conduct.

**VI. Qualified Immunity**

Mr. Thomas also objects to Judge Oberg's finding that the Defendants are entitled to qualified immunity. *Id*. at 22. His arguments on this issue largely repeat his arguments in support of his claims for unlawful detention, retaliation against him for exercising his First Amendment rights, and the use excessive force. *Id*. at 23–24. As discussed above, Mr. Thomas has not identified any violation of his constitutional rights in relation to his detention, arrest, or exercise of his First Amendment rights. It is therefore unnecessary for this court to resolve Mr. Thomas' objections regarding the Defendants' qualified immunity defenses to those claims.

**CONCLUSION AND ORDER**

For the reasons above, Mr. Thomas' claims are DISMISSED with prejudice.

Mr. Thomas' August 27, 2026, motion to alter or amend this court's order dated August 26, 2026, (ECF No. 99) is DENIED AS MOOT as that order has already been stricken.

DATED September 22, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Court Judge
District of Utah